25CA1356 Peo in Interest of Lozoya 10-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1356
Pueblo County District Court No. 24MH18
Honorable Amiel Markenson

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Jose Luis Lozoya,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE SCHUTZ
J. Jones and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant.

¶ 1     Respondent, Jose Luis Lozoya, appeals the district court's order authorizing the staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him involuntarily. We affirm.

I.     Background

¶ 2     Lozoya was committed to the hospital in October 2023 after being found incompetent to proceed in a criminal case. This was his third admission for inpatient competency restoration.

¶ 3     Shortly after Lozoya's readmission to the hospital, he was experiencing auditory and visual hallucinations, disorganized thinking, poor hygiene, poverty of thought, flat affect and other significant negative symptoms, including limited speech production and poor energy to compete daily tasks. He was diagnosed with schizophrenia. Lozoya developed an extensive rash on his face and around his eyes, which was caused by his repeated application of various personal care products, including lotion and hair gel, to his face. The hospital sought to treat Lozoya with paliperidone (Invega) and clozapine (Clozaril) — two antipsychotic medications that had restored Lozoya to competency during his last hospital stay. Lozoya agreed to take paliperidone but refused to resume treatment with clozapine.

1

¶ 4    In January 2024 and again in July 2024, the People filed petitions to authorize the involuntary administration of three antipsychotic medications to treat Lozoya's schizophrenia: clozapine, paliperidone, and olanzapine.  Shortly after those petitions were filed, the parties entered consent orders authorizing the involuntary administration of all three medications.

¶ 5    In January 2025, the People again petitioned the district court for authorization to involuntarily treat Lozoya with clozapine, paliperidone, and olanzapine.  After a hearing, the district court granted the petition for the scheduled medications, clozapine and paliperidone, but concluded that the People had not met their burden of proof to justify involuntary treatment with the as-needed medication olanzapine, given its infrequent use.  Lozoya appealed the court's order and a division of this court affirmed.  *See People in Interest of Lozoya*, (Colo. App. No. 25CA0251, May 8, 2025) (not published pursuant to C.A.R. 35(e)).

¶ 6    In July 2025, the People filed the petition at issue, seeking this time to involuntarily medicate Lozoya with clozapine and paliperidone.  The district court held an evidentiary hearing at which Lozoya and his treating physician, Dr. Paul Mattox, testified.

¶ 7 Dr. Mattox described Lozoya's schizophrenia disorder and accompanying symptoms. He also described the requested medications, explained their possible side effects, and opined that they are necessary to treat Lozoya's symptoms. Lozoya testified that he was not sure if he had a mental illness but was not willing to take the requested medications because the blood draws required for clozapine and the monthly paliperidone shots "hurt a lot."

¶ 8 The district court found that Dr. Mattox testified "credibly and persuasively." The court also found that the People had established all four elements justifying the involuntary administration of medication set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). Accordingly, the court granted the petition and authorized the administration of clozapine and paliperidone to Lozoya against his will.

## II. Applicable Law and Standard of Review

¶ 9 The parties agree that the district court's ruling was governed by the four-part test from *Medina*. Under the *Medina* test, a district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2)

3

the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Id.* at 973.

¶ 10    Applying the *Medina* test presents a mixed question of fact and law; we defer to the district court's factual findings if supported by the record but review its legal conclusions de novo. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. It is for the district court, as the fact finder, to determine the credibility of witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence. *Id.*

¶ 11    We must affirm the district court's ruling if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* criteria. *Id.* at ¶ 30.

## III. Analysis

¶ 12    Lozoya contends that the evidence was insufficient to prove the fourth *Medina* element. We disagree.

¶ 13    In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 14    Lozoya contends that the state's interest in treating him is insufficient to overcome his bona fide and legitimate interest in avoiding painful blood draws and the potentially serious side effects of the medications. While the district court found that Lozoya has a bona fide and legitimate interest in avoiding the pain of the blood draws associated with clozapine monitoring and pain caused by paliperidone injections, there was no testimony or other evidence supporting Lozoya's appellate contention that he also wished to

avoid side effects associated with the medications. Rather, Dr. Mattox and Lozoya both testified that Lozoya's objection to the requested medications was the "physical discomfort caused" with "the blood tests required for clozapine administration" as well as "the monthly injection of [paliperidone]." Moreover, Lozoya testified that he has not experienced *any* side effects from the requested medications. And Dr. Mattox confirmed that Lozoya has no underlying health conditions that could be affected or worsened by the requested medications.

¶ 15    As to Lozoya's stated reasons for avoiding the requested medications — pain experienced during blood draws and injections — the district court expressly acknowledged Loyoza's legitimate concerns in avoiding the pain associated with the proposed treatment. However, after weighing Lozoya's bona fide and legitimate interests against the state's interest in preserving his life and health and protecting the safety of those in the institution, the court found that the need to administer Lozoya's medication by injection — which it allowed only if he refused to take his medication orally — and the need to monitor the administration of

clozapine by blood draw is sufficiently compelling to override his concerns. These findings enjoy record support.

¶ 16    Dr. Mattox opined that the failure to medicate Lozoya would be more harmful than the risks posed by the requested medication. In support of this opinion, Dr. Mattox explained that Lozoya has a "history of deterioration that has resulted in recurrent hospitalizations," and during this hospitalization, "his deterioration led to a significant facial rash, causing him significant risk of harm to himself." Dr. Mattox said that, since Lozoya has been on court-ordered medications, he "is more interactive and more conversant."

¶ 17    Dr. Mattox also testified that Lozoya has "treatment-resistant schizophrenia," — that is, he does "not respond[] well to other antipsychotic medications." Thus, Dr. Mattox opined that, if Lozoya does not continue taking the requested medications, "he's at risk for deterioration" and he needs the requested medications "to maintain his stability." Indeed, Lozoya was previously stabilized on a treatment regimen of clozapine and paliperidone. But after he was discharged from the hospital, he was not taking clozapine and subsequently deteriorated and had to be readmitted.

¶ 18    We appreciate Lozoya's concerns about avoiding pain during any necessary involuntary paliperidone injections and the blood draws necessary to monitor the administration of clozapine. However, because the record supports the district court's findings, we conclude that it did not err by finding that Lozoya's reasons for refusing the requested medication are overridden by his sufficiently compelling need for treatment.  *See R.K.L.*, ¶¶ 13, 30.

¶ 19    Because Lozoya does not challenge the district court's findings concerning the other *Medina* factors, we conclude the evidence was sufficient to support the involuntary medication order.

IV.    Disposition

¶ 20    The order is affirmed.

JUDGE J. JONES and JUDGE GROVE concur.